UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO PACIFIC CORPORATION, an Idaho corporation,<br><br>                    Plaintiff,<br><br>v.<br><br>BINEX LINE CORPORATION, a foreign corporation,<br><br>                    Defendant. | Case No. 4:15-cv-00510-CWD<br><br>**MEMORANDUM DECISION AND ORDER RE: MOTION TO TRANSFER OR DISMISS CASE (DKT. 3);**<br><br>**MOTION TO STRIKE DECLARATION OF MARK CHANG (DKT. 10); AND**<br><br>**MOTION TO STRIKE DECLARATION OF JASON KWON (DKT. 20)** |

## INTRODUCTION

Pending before the Court are three motions. First, Defendant filed a Motion to Transfer or Dismiss Case for improper venue. (Dkt. 3.) Next, Plaintiff filed two motions to strike certain paragraphs in the Declarations of Mark Chang and Jason Kwon. (Dkts. 10, 20.) The Court heard oral argument from the parties on all three motions on February 10, 2016. After review of the record, consideration of the parties' arguments and relevant legal authorities, and otherwise being fully advised, the Court issues the following memorandum decision and order on the motions.

**MEMORANDUM DECISION AND ORDER - 1**

# BACKGROUND

Plaintiff Idaho Pacific Corporation is a potato dehydrator and sells potato flour to its various customers. Defendant Binex Line Corporation operates in the business of international freight forwarding. This action arises out of a return international shipment of Idaho Pacific's potato flour for which Binex Line was the freight forwarder.

In May of 2014, Idaho Pacific sold an order of its potato flour to Orion Corporation, a customer located in Busan, Korea. The terms of the sale between Orion and Idaho Pacific were F.O.B. Factory with Orion responsible for making all freight shipment arrangements. Aff. Browning, ¶ 2. (Dkt. 11.) Orion selected Binex Line as its freight forwarder; Idaho Pacific alleges it had no involvement in the selection of Binex Line and did not sign any contracts with Binex Line. Idaho Pacific alleges to have never received a copy of the full bill of lading from Binex Line for the initial outbound shipment of potato flour to Busan.[1] Supp. Aff. Browning, ¶ 2. (Dkt. 12.)

Upon arrival in Busan, Orion took possession of the potato flour—at this point, Idaho Pacific alleges it was no longer the cargo owner of the potato flour. 2nd. Supp. Aff. Browning, ¶¶ 2, 10. (Dkt. 18 at 1-3.) Orion performed its own tests on the potato flour, and for unknown reasons, sought to return portions of the product. *Id.* at ¶ 2. Idaho Pacific agreed Orion could return the portion of the product that was not up to Orion's specifications and offered to pay the freight costs for the return shipment. *Id.* at ¶¶ 4, 9.

---

[1] Wally Browning, President and CEO of Idaho Pacific, alleges, "IPC did receive, at some point, the front page of the **outbound** bill of lading by which the product was sent to Orion in Korea. It is not clear if the full original outbound bill of lading was sent to IPC; if it was, the original is not now in IPC's files and only a copy of the front page has now been located." Supp. Aff. Browning, ¶ 2. (Dkt. 12) (emphasis in original).

**MEMORANDUM DECISION AND ORDER - 2**

Idaho Pacific alleges it sought to use its own freight forwarder for the return shipment

and had no intent of using Binex Line. *Id.* at ¶ 4. However, Orion wanted to use Binex

Line and made the arrangements for the return shipment. *Id.* Idaho Pacific alleges it did

not receive a bill of lading from Binex Line for the return shipment.

On or about June 15, 2015, the potato flour arrived from Busan in Oakland,

California. Pursuant to Food and Drug Administration regulations, the potato flour

shipment had to be sampled upon entry into the United States. On June 23, 2015, the

FDA placed the potato flour shipment on hold so the FDA could take samples. The potato

flour was moved to a storage facility and was sampled on June 30, 2015. The FDA results

were released on July 27, 2015. Binex Line stored the potato flour in Oakland until July

29, 2015.

The parties disagree about the proper shipping protocol for the potato flour

product while awaiting FDA lab results. Binex Line's position is that it had to continue to

store the potato flour until it received the FDA's results. On the other hand, Idaho Pacific

alleges Binex Line was not required to wait for the FDA before shipping the potato flour

to Ririe, Idaho. Rather, Idaho Pacific alleges Binex Line was required to hold the potato

flour only until the initial sampling and inspection by the FDA, which occurred on June

30, 2015.

On or about July 29, 2015, Binex Line began shipping the potato flour from

Oakland to Ririe by rail. During a stop in Salt Lake City, Utah, Binex Line demanded

payment from Idaho Pacific for its freight charges. These charges included the costs for

**MEMORANDUM DECISION AND ORDER - 3**

the storage in Oakland, which had occurred from July 1, 2015, through July 29, 2015, and included also additional storage costs for the storage in Salt Lake City.

Binex Line continues to hold Idaho Pacific's potato flour in Salt Lake City and refuses to return it to Ririe until it receives payment for the total charges it claims it is owed from Idaho Pacific. As of September 3, 2015, this amount totaled $20,799.78. Idaho Pacific alleges it offered to pay all the ordinary and standard rail and freight charges in the amount of $8,599.78, and has continued to offer to pay those transportation costs throughout this dispute.

## PROCEDURAL POSTURE

Idaho Pacific filed a complaint on September 18, 2015, against Binex Line, in the district court of the Seventh Judicial District of the State of Idaho, in Bonneville County, seeking a declaratory judgment regarding the amount it owes to Binex Line for the return shipment of potato four. The complaint alleges also conversion and breach of duty, and seeks monetary relief, including future lost profits and damages for the loss of the use and possession of the potato flour. Binex Line timely removed the action to this Court on October 29, 2015, based upon federal question jurisdiction.

The next day, Binex Line filed a Motion to Transfer or Dismiss Case. (Dkt. 3.) In support of its motion, Binex Line attached the Declaration of Mark Chang, the Import Export Manager of Binex Line who works at Binex Line's Torrance, California headquarters. Chang alleges he is responsible for the import and export shipments for all of Binex Line's offices throughout the United States and is an authorized custodian of

**MEMORANDUM DECISION AND ORDER - 4**

records for Binex Line. On November 18, 2015, Idaho Pacific moved to strike a portion of Chang's declaration on the ground that the statement lacks proper foundation.

On December 7, 2015, Binex Line filed the Declaration of Jason Kwon in Response to Motion to Strike Declaration of Mark Chang.[2] (Dkt. 17.) Jason Kwon is the Assistant Import General Manager of Binex Line and is also a custodian of records for Binex Line. Attached to Kwon's declaration is a chain of emails between Julian Awdry, who appears to be an Idaho Pacific employee, and Min, who appears to be an employee of Orion.[3] (Dkt. 17-1.) The Kwon Declaration and the emails do not specify the roles and responsibilities of Awdry and Min. Nor does the Declaration explain Kwon's or Binex Line's relationship to Awdry or Min. On December 15, 2015, Idaho Pacific moved to strike several paragraphs in the Kwon Declaration and the attached chain of emails between Awdry and Min.

Before taking up the Motion to Transfer or Dismiss (Dkt. 3), the Court must first consider Idaho Pacific's two related motions to strike. (Dkts. 10, 20.)

## MOTIONS TO STRIKE (DKTS. 10, 20)

### 1. Standards of law

#### A. Fed. R. Evid. 801(c)—Hearsay

Hearsay is defined as an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801. Hearsay evidence is not admissible unless it falls

---

[2] No formal response in opposition to the motion to strike the Declaration of Chang was filed with Kwon's declaration.
[3] The recipient/sender headings of the emails are not in English.

within an exception set forth by federal statute, the Federal Rules of Evidence, or another rule prescribed by the Supreme Court. Fed. R. Evid. 802.

### B. Fed. R. Evid. 801(d)(2)—Statements that are not Hearsay

A statement that meets the following conditions is not hearsay:

> (2) An Opposing Party's Statement. The statement is offered against an opposing party and:
>
>> (A) was made by the party in an individual or representative capacity;
>>
>> (B) is one the party manifested that it adopted or believed to be true;
>>
>> (C) was made by a person whom the party authorized to make a statement on the subject;
>>
>> (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
>>
>> (E) was made by the party's coconspirator during and in furtherance of the conspiracy.

Fed. R. Evid. 801(d)(2).

### C. Fed. R. Evid. 602—Personal Knowledge

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602.

**MEMORANDUM DECISION AND ORDER - 6**

**2. Motion to Strike Declaration of Mark Chang (Dkt. 10)**

Through its Motion to Strike the Declaration of Mark Chang (Dkt. 10), Idaho Pacific claims the second sentence in paragraph seven of Chang's Declaration lacks foundation.  Paragraph seven reads:

> Upon discharge in Busan, Korea Orion Corp. inspected the shipment and rejected it for 'microbe counts higher than standard.' <u>Thereafter Plaintiff IPC instructed Orion Corp. to ship the cargo back to IPC though IPC's [Non-Vessel Operating Common Carrier (NCOVV)], Defendant Binex.</u>

Idaho Pacific argues Chang, a Binex Line representative, does not state in the Declaration how he knows what Idaho Pacific told Orion with respect to shipping the potato flour back to Idaho. During the hearing before this Court, Binex Line conceded the statement in this paragraph of the Chang Declaration lacks foundation. Accordingly, the objection will be sustained and the Court will not consider paragraph seven when determining Binex Line's motion to transfer or dismiss.

**3. Motion to Strike Declaration of Jason Kwon (Dkt. 20)**

Through its Motion to Strike the Declaration of Jason Kwon (Dkt. 20), Idaho Pacific objects to paragraphs four, six, seven, and eight on the grounds of lack of foundation and hearsay. Idaho Pacific seeks also to strike the chain of emails between Awdry and Min, attached to the Declaration. Binex Line opposes the motion to strike, alleging generally, that all challenged portions of Kwon's Declaration are not hearsay because they qualify as opposing party statements pursuant to Fed. R. E. 801(d)(2). The Court will address each paragraph and the email chain attachment separately below.

### A. Paragraph Four

Paragraph four of the Kwon Declaration states:

> With regard to return of the subject cargo of potato flour that was rejected by Korean Customs, <u>the Korean consignee Orion Corporation advised us that upon importation into Korea and inspection of the cargo, the Korean Customs had rejected the shipment</u>. At that point Binex was responsible for the cargo as the importing freight forwarder, including all costs of detention and storage.

(emphasis added).

Idaho Pacific objects to the underlined sentence in this paragraph on hearsay grounds—an out of court statement offered to prove the truth of the matter asserted. Nonetheless, the Court finds the underlined portion of paragraph four does not qualify as an opposing party statement under Fed. R. Evid. 801(d)(2) because Orion is not a party to this litigation and Binex Line has failed to allege facts to demonstrate that Orion was acting as Idaho Pacific's agent when this statement was made. Accordingly, the Court will sustain the objection with regard to paragraph four and will not consider this paragraph when determining Binex Line's motion to transfer or dismiss.

### B. Paragraph Six

Paragraph six in the Kwon Declaration states:

> At that time Orion Corporation also asked Binex for a quote for Binex to handle shipment of the cargo back to Ririe, ID on behalf of Plaintiff IPC.

Idaho Pacific objects to the entirety of this paragraph on the ground of hearsay. The Court finds paragraph four does not qualify as an opposing party statement for the same reasons stated in paragraph four. Accordingly, the Court will grant the motion to

**MEMORANDUM DECISION AND ORDER - 8**

strike with regard to Idaho Pacific's objection to paragraph six and will not consider this paragraph when analyzing Binex Line's motion to transfer or dismiss.

### C. Paragraph Seven

Paragraph seven in the Kwon Declaration states:

> Binex duly provided a quote to Orion Corporation and Orion Corporation provided that quote to Plaintiff IPC. Thereafter Orion Corporation advised Binex that Plaintiff IPC accepted Binex's quote.

Idaho Pacific objects to the entirety of this paragraph on the grounds of lack of foundation and hearsay. The Court finds the statement lacks foundation as Kwon does not explain who from Orion told him that the quote was provided to Idaho Pacific. In addition, this statement does not qualify as an opposing party statement under Fed. R. Evid. 801(d) (2) because Orion is a third party and Binex Line has failed to allege facts to demonstrate that Orion was acting as Idaho Pacific's agent when this statement was made. Accordingly, the Court will sustain the objection will not consider this paragraph when determining Binex Line's motion to transfer or dismiss.

### D. Paragraph Eight and Email String Attachment

Paragraph eight in the Kwon Declaration states:

> A true and correct copy of an email string dated May 23, 2015 from Julian Awdry at Plaintiff IPC to Orion Corporation accepting Binex's quote, which was forwarded to Binex, is attached hereto as Exhibit A.

(emphasis added).

Idaho Pacific objects to the underlined portion of statement based on lack of foundation. Specifically, Idaho Pacific argues Kwon does not explain in his Declaration how he knows that the emails in the chain between Awdry and Min are in fact true and

**MEMORANDUM DECISION AND ORDER - 9**

correct copies. Binex Line did not address Idaho Pacific's foundation objection in its response.

During the hearing, when asked whether Kwon identifies Min and Awdry in his Declaration, Binex Line conceded that there is nothing in the record as to who Min and Awdry are and acknowledged that more foundation is needed before the Court would consider this statement by Kwon and the attached email string. Accordingly, the Court will sustain Idaho Pacific's objection and will not consider paragraph eight in the Kwon Declaration and the attached email string (exhibit A) when determining Binex Line's motion to transfer or dismiss.

## MOTION TO TRANSFER OR DISMISS CASE (DKT. 3)

The crux of Binex Line's motion to transfer or dismiss rests on the Court's determination of the proper forum for adjudication of the complaint. If the forum selection clause is binding and no exceptional circumstances are present which would otherwise warrant non-enforcement of the clause, Idaho Pacific is contractually obligated to pursue its claims in this action in the United States District Court for the Central District of California, and this Court may transfer the case to that venue. If the forum selection cause is inoperable, or exceptional circumstances weigh in favor of non-enforcement, the case will remain in the District of Idaho.

## 1. Relevant Provisions of the Bill of Lading

The content of the bill of lading for the return shipment of potato flour from Busan, Korea, to Ririe, Idaho, is central to the resolution of Defendant's motion. The front page of the bill of lading lists Orion as the shipper/exporter, and Idaho Pacific as the

**MEMORANDUM DECISION AND ORDER - 10**

consignee.[4] Dec. Chang, Ex. B. (Dkt. 3-4.)  The front page includes also the details of delivery, identifying Busan, Korea, as the port of loading, Oakland, California as the port of discharge, and Ririe, Idaho, as the final destination. *Id.*

The reverse side of the bill of lading contains a forum selection clause, mandating that any claims relating to the freight shipment must be resolved in the United States District Court for the Central District of California. *Id.* at Ex. B § 2(1). (Dkt. 3-4 at 2.) It also indicates that, in the event the bill of lading pertains to a shipment to or from the United States, the Carriage of Goods by Sea Act (COGSA) applies "throughout the time the Goods are in the custody of the Carrier and/or Actual Carrier and until the Goods are delivered to Merchant." *Id.* at Ex. B § 1(1). (Dkt. 3-4 at 2.)

## 2. Preliminary Matter: Does the Carriage of Goods By Sea Act or the Carmack Amendment Apply to the Instant Action?

Binex Line removed this case from Idaho state court on the grounds that Idaho Pacific's complaint alleges damages arising out of the Carriage of Goods by Sea Act, 46 U.S.C. § 1300, or alternatively, the complaint alleges damages arising under the Carmack Amendment, 49 U.S.C. § 11706.  However, Binex Line argued in its reply brief, that COGSA applies. Idaho Pacific did not address either federal statute in its response, but argued at the hearing that, once cargo leaves the port, any claim of damage to the cargo which occurs while on railway, is governed by Carmack, which it contends is the situation here.[5]

---

[4] A consignee is "the person named in a bill to whom or to whose order the bill [of lading] promises delivery." *Consignee*, BLACK'S LAW DICTIONARY (10th ed. 2014).
[5] At the hearing, Idaho Pacific clarified it does not dispute federal question jurisdiction.

Though not addressed by the parties in their briefs, COGSA and the Carmack Amendment treat forum selection clauses differently. COGSA recognizes the validity of reasonable forum selection clauses, while the Carmack Amendment recognizes the validity of a forum selection clause only if the parties formally opt out of the statute's venue restrictions. *See Regal-Beloit Corp. v. Kawasaki Kisen Kaisha Ltd.,* 557 F.3d 985, 988 (9th Cir. 2009). Thus, as a threshold matter, the Court first must determine whether COGSA or the Carmack Amendment applies to the instant action before addressing the forum selection clause at issue in the motion to transfer or dismiss.

## A. Background of COGSA and the Carmack Amendment

### i. COGSA

The Supreme Court in *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 96 (2010), explains the COGSA as follows:

> COGSA governs the terms of bills of lading issued by ocean carriers engaged in foreign trade. 49 Stat. 1207, as amended, note following 46 U.S.C. § 30701, p. 1178. It requires each carrier to issue to the cargo owner a bill that contains certain terms. § 3(3)-(8), at 1178–1179. Although COGSA imposes some limitations on the parties' authority to adjust liability, it does not limit the parties' ability to adopt forum-selection clauses. See *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer,* 515 U.S. 528, 537–539, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995). By its terms, COGSA only applies to shipments from United States ports to ports of foreign countries and vice versa. §§ 1(e), 13, at 1178, 1180. The statute, however, allows parties "the option of extending [certain COGSA terms] by contract" to cover "the entire period in which [the goods] would be under [a carrier's] responsibility, including [a] period of ... inland transport." *Kirby,* 543 U.S., at 29, 125 S.Ct. 385 (citing COGSA § 7, at 1180).

### ii. Carmack Amendment

The "Carmack [Amendment] governs certain interstate cargo claims against rail and motor carriers." *Meritz Fire & Marine Ins. Co. v. Hapag-Lloyd (Am.), Inc.*, No., 2009 WL 2916799, at *3 (C.D. Cal. Sept. 2, 2009). The Carmack Amendment provides, in relevant part, as follows:

> (a) A rail carrier providing transportation or service subject to the jurisdiction of the [Surface Transportation Board (STB)] under this part shall issue a receipt or bill of lading for property it receives for transportation under this part. That rail carrier and any other carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the [STB] under this part are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this subsection is for the actual loss or injury to the property caused by:
>
> > (1) the receiving rail carrier;
> >
> > (2) the delivering rail carrier; or
> >
> > (3) another rail carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading.

49 U.S.C. § 11706(a).

Further, the Carmack Amendment limits the parties' ability to choose the venue of their suit as follows:

> (d)(1) A civil action under this section may be brought in a district court of the United States or in a State court.
>
> (2)(A) A civil action under this section may only be brought—
>
> > (i) against the originating rail carrier, in the judicial district in which the point of origin is located;

**MEMORANDUM DECISION AND ORDER - 13**

(ii) against the delivering rail carrier, in the judicial district in which the principal place of business of the person bringing the action is located if the delivering carrier operates a railroad or a route through such judicial district, or in the judicial district in which the point of destination is located; and

(iii) against the carrier alleged to have caused the loss or damage, in the judicial district in which such loss or damage is alleged to have occurred."

49 U.S.C. § 11706(d).

**B. Analysis**

The Supreme Court in *Regal-Beloit*, 561 U.S. at 96, addressed the issue of "whether the terms of a through bill of lading[6] issued abroad by an ocean carrier can apply to the domestic part of the import's journey by a rail carrier, despite prohibitions or limitations in another federal statute [i.e., the Carmack Amendment]," and ultimately concluded COGSA governs and displaces Carmack in such instances.

*Regal-Beloit* involved an import from China to Oklahoma via the port at Long Beach, California. The shipper hired an ocean carrier, who hired a rail carrier to complete the inland segment to Oklahoma. The ocean carrier issued a through bill of lading to the shipper; the bill of lading included a forum selection clause, designating the Tokyo District Court. The rail carrier did not issue a separate bill of lading. The train carrying the cargo derailed in Oklahoma, and the parties disputed enforcement of the forum selection clause.

---

[6] A bill of lading is essentially a contract and a "through" bill of lading is one which provides for end-to-end transportation. *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 18-19 (2004).

**MEMORANDUM DECISION AND ORDER - 14**

*Regal-Beloit* hits the current situation square on. The Court finds COGSA applies here, because there is no dispute the bill of lading covered the entire journey of the shipment, from Busan, Korea, to Ririe, Idaho (i.e. the shipment was not piecemealed out into separate bills of lading for each segment of transportation). Accordingly, because COGSA does not limit the parties' abilities to adopt forum selection clauses, the forum selection clause contained in the bill of lading will be enforced unless exceptional circumstances weigh in favor of non-enforcement.

## 2. Legal Standard Re: Enforcement of a Forum Selection Clause

A forum selection clause must be "given controlling weight in all but the most exceptional circumstances." *Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 579 (2013); *see also Wada Farms, Inc. v. Jules & Associates, Inc.*, 2015 WL 128100, at *1 (D. Idaho Jan. 7, 2015). "When the parties have agreed to a valid forum selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Id.* A forum selection clause may be enforced by a motion to transfer pursuant to 28 U.S.C. § 1404(a).[7]  *Atlantic Marine,* 134 S.Ct. at 575. Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

---

[7] Binex Line brings its Motion to Transfer or Motion to Dismiss (Dkt. 3) pursuant to Fed. R. Civ. P. 12(b)(3), and 28 U.S.C. § 1406. However, the Supreme Court in *Atlantic Marine* clarified that Section 1406(a) and Fed. R. Civ. P. 12(b)(3) allow for dismissal only when venue is "wrong" or improper." *Atlantic Marine*, 134 S.Ct. at 577. "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and the existence of a forum selection clause does not render venue in a court 'wrong' or 'improper' under these rules." *Fine v. Cambridge Int'l Sys., Inc.*, 584 F. App'x 695, 696 (9th Cir. 2014) (citing *Atlantic Marine*, *134* S.Ct. at 578-9). Accordingly, the Court will analyze Binex Line's argument pursuant to Section 1404(a).

MEMORANDUM DECISION AND ORDER - 15

where it might have been brought or to any district or division to which all
parties have consented.

"Only under extraordinary circumstances unrelated to the convenience of the parties
should a [Section] 1404(a) motion be denied." *Atlantic Marine*, 134 S. Ct. at 581.

Typically, a district court considering a Section 1404(a) motion "evaluate[s] both
the convenience of the parties and various public-interest considerations" and "weigh[s]
the relevant factors[8] and decide[s] whether, on balance, a transfer would serve 'the
convenience of parties and witnesses' and otherwise promote 'the interest of justice.'"
*Atlantic Marine*, 134 S. Ct. at 581; § 1404(a). However, the presence of a forum selection
clause, like the one here, alters the Section 1404(a) analysis in three ways. *Id.* at 582; *see
also Wada Farms, Inc. v. Jules & Associates, Inc.*, 2015 WL 128100, at *1 (D. Idaho Jan.
7, 2015).

"First, the plaintiff's choice of forum merits no weight." *Atlantic Marine*, 134 S.Ct.
at 582. "Rather, as the party defying the forum-selection clause, the plaintiff bears the
burden of establishing that transfer to the forum for which the parties bargained is
unwarranted" *Id.*

---

[8] "Factors relating to the parties' private interests include 'relative ease of access to sources of proof;
availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of
willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all
other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Atlantic Marine*,
134 S. Ct. 581, n. 6 (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, n. 6 (1981)). "Public-interest
factors may include 'the administrative difficulties flowing from court congestion; the local interest in
having localized controversies decided at home; [and] the interest in having the trial of a diversity case in
a forum that is at home with the law.'" *Ibid.* "The Court must also give some weight to the plaintiffs'
choice of forum." *Ibid.*

"Second, a court evaluating a defendant's [Section] 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests," such as convenience. *Id.* "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* "A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* And, "[a]s a consequence, a district court may consider arguments about public interest factors only." *Id.*

Third and finally, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a [Section] 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.*

### 3. Discussion

Binex Line argues that the bill of lading's forum selection clause precludes litigation in this Court because the forum selection clause is valid, binding upon the parties, and reasonable. To the contrary, Idaho Pacific contends the forum selection clause is void because of Idaho's strong public policy against such clauses, and alternatively, that enforcement of the clause is unreasonable because Idaho Pacific was not a party to and did not bargain for the forum selection clause or any of the other terms contained in the bill of lading. For the reasons more fully explained below, the Court finds exceptional circumstances warrant non-enforcement of the forum selection clause.

**MEMORANDUM DECISION AND ORDER - 17**

### A. Idaho's public policy against forum selection clauses, on its own, does not qualify as an "exceptional circumstance"

Idaho Pacific argues that Idaho's strong public policy against forum selection clauses[9] renders the current forum selection clause in the bill of lading void. Idaho Pacific relies on the Ninth Circuit's holding in *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 496 (9th Cir. 2000), for the contention that the presence of a state public policy against forum selection clauses, on its own, can render any forum selection clause unenforceable. However, the holding in *Jones* is not as black and white as Idaho Pacific contends.

*Jones* involved a dispute between a franchisor and franchisee. *Id.* Despite the fact the parties' franchise agreement contained a forum selection clause designating venue in the Western District of Pennsylvania, the franchisee filed suit in California. *Id.* The franchisor sought to either dismiss or transfer the case to the Western District of Pennsylvania pursuant to 28 U.S.C. § 1406, and alternatively sought a transfer of venue under 28 U.S.C. § 1404(a). *Id.* The franchisee argued the forum selection clause was invalid due to California's strong public policy against forum selection clauses. *Id.* The Ninth Circuit analyzed the enforcement of the forum selection clause under each federal statute, and concluded that neither statute warranted a transfer of venue. *Id.* at 498-99.

---

[9] Idaho Code Section 29-110 provides in relevant part:

> (1) Every stipulation or condition in a contract, by which any party thereto is restricted from enforcing his rights under the contract in Idaho tribunals, or which limits the time within which he may thus enforce his rights, is void as it is against the public policy of Idaho. Nothing in this section shall affect contract provisions relating to arbitration so long as the contract does not require arbitration to be conducted outside the state of Idaho.

**MEMORANDUM DECISION AND ORDER - 18**

In its analysis under 28 U.S.C. § 1406, the Ninth Circuit in *Jones* found that the California statute against enforcement of forum selection clauses expressed "a strong public policy of the State of California to protect California franchisees from the expense, inconvenience, and possible prejudice of litigating in a non-California venue," and thus, concluded the forum selection clause was unenforceable. *Jones*, 211 F. 3d at 498; *see M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) ("[a] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision."). In its analysis under 28 U.S.C. § 1404(a), the court considered the California public policy against forum selection clauses among other factors,[10] and concluded the franchisor failed to meet its burden of showing that the Pennsylvania forum was the more appropriate forum for the action. *Jones*, 211 F.3d at 499.

The Court finds Idaho Pacific's reliance on *Jones* is misplaced in light of the more recent Supreme Court decision in *Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 579 (2013), which clarified the proper procedure to enforce a forum selection clause. *Atlantic Marine* also altered the analysis/balancing test the Court must employ when interpreting a motion to transfer venue when a forum section clause is at play.

---

[10] Those factors included: "the vast majority of the other agreements underlying Jones' claims were negotiated and executed in California;" "[Jones'] choice [was] supported by California's strong public policy to provide a protective local forum for local franchisees;" "the extent of the parties' contacts with Pennsylvania and California clearly favored California;" "Jones' claims arose out of the construction and initial operation of the store located in LaVerne, California;" "the relative financial burdens of litigating in each of the forums favored California;" and more of the relevant witnesses and other sources of proof were located in California." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000).

MEMORANDUM DECISION AND ORDER - 19

*Atlantic Marine* explained the proper procedure available for a defendant in a civil case who seeks to enforce a forum selection clause is through a motion to transfer under § 1404(a), and not through a motion to dismiss under § 1406(a). Idaho Pacific relies heavily upon the *Jones* analysis pursuant to § 1406, which concluded that the particular California public policy against forum selection clauses, on its own, invalidated the forum selection clause contained in the parties' franchise agreement. The Court, however, declines to rely on *Jones*, as § 1406 is not the proper procedure for Binex Line to seek enforcement of the forum selection clause.

Further, *Atlantic Marine* altered the burden of proof when analyzing a § 1404(a) motion for transfer of venue when a forum selection clause is at issue. Specifically, *Atlantic Marine* held that the forum selection clause "deserves deference, and the plaintiff must bear the burden of showing why the court should not transfer the case to the forum where the parties agreed." *Atlantic Marine*, 134 S.Ct. at 582. *Jones* placed the burden on the defendant to demonstrate why the selected forum was more appropriate than plaintiff's forum selection in California. *Id.* at 499; *see also Stewart Org. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988) (a forum selection clause is not dispositive in § 1404(a) balancing test). Because the burden of proof rests here on Idaho Pacific, the holding in *Jones*, pursuant to its analysis under § 1404(a), is not persuasive.

More persuasive, and consistent with the principles in *Atlantic Marine*, is this Court's recent holding in *Wada Farms, Inc. v. Jules & Associates, Inc.*, 2015 WL 128100, at *2 (D. Idaho Jan. 7, 2015), where the Court concluded a plaintiff "must point to something more than just the statute itself to warrant ignoring the forum selection

**MEMORANDUM DECISION AND ORDER - 20**

clause," because "[i]f Idaho Code § 29–110(1) was determinative, striking down the forum selection clause would be *routine* rather than *extraordinary,* standing *Atlantic Marine* on its head." (emphasis in original). Accordingly, the Court rejects Idaho Pacific's argument that Idaho's public policy against forum selection clauses, without more, is sufficient to invalidate the clause at issue here.

### B. Idaho Pacific's Complete Lack of Bargaining for the Forum Selection Clause Constitutes an Extraordinary Circumstance

Idaho Pacific argues enforcement of the forum selection clause would be unreasonable, because it was not the owner of the potato flour cargo and not a party to the bill of lading for the return shipment of the potato flour from Busan, Korea, to Ririe, Idaho. In support of its argument, Idaho Pacific contends it only offered to cover Orion's shipping costs for the return shipment, and did not contract or negotiate with Binex Line for any terms contained within the bill of lading, including the forum selection clause. Idaho Pacific alleges Orion selected Binex Line as the freight forwarder, and that Idaho Pacific had no input in Orion's selection of Binex Line. And, Idaho Pacific alleges also that it never received a copy of the bill of lading until after this lawsuit was filed.

On the other hand, Binex Line argues that, because Idaho Pacific is listed on the bill of lading as the consignee, the bill of lading must be enforced against Idaho Pacific. Binex Line contends it does not matter that Idaho Pacific did not choose Binex Line as the freight forwarder because Idaho Pacific had the option to hire a different freight forwarder, and failed to exercise that option. Binex Line argued also at the hearing that "standard industry practice" weighs in favor of enforcement of the clause. Alternatively,

**MEMORANDUM DECISION AND ORDER - 21**

Binex Line argues, even if the Court finds Idaho Pacific is not a party to the bill of lading, Idaho Pacific accepted the bill of lading and should be bound by it because Idaho Pacific brought suit upon it. For the reasons that follow, the Court finds Idaho Pacific has met its burden by demonstrating exceptional circumstances to warrant non-enforcement of the forum selection clause.

Binex Line had failed to provide the Court with sufficient authority or other evidence to enable the Court to make such findings in its favor. Binex Line contends, without providing authority, that because Idaho Pacific is listed as the consignee on the return bill of lading, Idaho Pacific is bound by it. Further, Binex Line cites to a New York District Court case for the proposition that the owner of cargo can be bound by a forum selection clause in a bill of lading accepted by a NVOCC (Non-Vessel Operating Common Carrier). *See Laufer Grp. Int'l v. Tamarack Indus., LLC*, 599 F. Supp. 2d 528, 531 (S.D.N.Y. 2009). However, if the Court were to adopt the holding of this out of circuit case, the record here still is unclear as to whether Idaho Pacific was in fact the owner of the cargo at the time of the return shipment. Likewise, Binex Line, for the first time at the hearing, raised its standard industry practice argument without articulating facts or authority supporting or clarifying what the "standard industry practice" is and how it applies to the case at hand.  This issue is not properly before the Court at this time.

Binex Line's alternative argument that Idaho Pacific accepted the bill of lading by bringing suit upon it is also unsupported by the record. In support of this argument, Binex Line cites the Ninth Circuit case of *Kukje Hwajae Ins. Co., Ltd. v. M/V Hyundai Liberty*, 408 F.3d 1250, 1254 (9th Cir.2005), which found a cargo owner who is not a party to a

**MEMORANDUM DECISION AND ORDER - 22**

bill of lading can be bound by a forum selection clause contained in the bill of lading if the party "accepts" the bill of lading by bringing suit upon it. *Id.* In that case, the plaintiff filed suit against the defendant on all "applicable bills of lading;" the Ninth Circuit found "all applicable bills of lading" included the bill of lading between the plaintiff and defendant in that case. *Id.* Ultimately, the Ninth Circuit held that the plaintiff accepted the bill of lading "by the express terms of the complaint." *Id.* at 1255.

Here, Idaho Pacific does not reference the bill of lading or any of its terms in its complaint. Instead, in its response to this motion, Idaho Pacific specifically alleges it neither negotiated nor received the bill of lading for the return shipment until after it filed suit. Accordingly, the Court declines to find Idaho Pacific accepted the bill of lading by filing suit upon it.

An underlying policy in favor of upholding forum selection clauses, and present in a majority of the cases and authorities provided by the parties, stresses the importance of upholding forum selection clauses which were *bargained* for by the parties. *See Atlantic. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 579 (2013) ("'interest of justice' is served by holding parties to their bargain."); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) ("There are compelling reasons why a freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power, [ ], should be given full effect."); *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) ("the District Court will be called on to address such issues as the convenience of a Manhattan forum given the parties' expressed preference for that venue, and the fairness of transfer in light of the forum-selection clause and the

**MEMORANDUM DECISION AND ORDER - 23**

parties' relative bargaining power."); and *Wada Farms, Inc. v. Jules & Associates, Inc.*, 2015 WL 128100, at *2 (D. Idaho Jan. 7, 2015) ("A valid forum selection clause bargained for by the parties, protects their legitimate interests and further vital interests of the justice system.").There is no evidence that any bargaining occurred in the present case between Binex Line and Idaho Pacific for the forum selection clause or any of the other terms contained in the bill of lading. Accordingly, the Court finds Idaho Pacific's lack of bargaining power qualifies as an exceptional circumstance to warrant non-enforcement of the forum selection clause contained in the bill of lading.

## CONCLUSION

For the reasons articulated above, the Court will deny Defendant's motion to transfer venue (Dkt. 3) as it finds exceptional circumstances are present which weigh against enforcement of the forum selection clause. Further, the Court will grant Plaintiff's motions to strike the challenged paragraphs in the Declarations of Chang (Dkt. 10) and Kwon (Dkt. 20) for lack of foundation and hearsay as explained above.

## <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      Defendant's Motion to Transfer or Dismiss Case (Dkt. 3) is **DENIED**;

2)      Plaintiff's Motion to Strike Declaration of Mark Chang (Dkt. 10) is

      **GRANTED**; and

3)      Plaintiff's Motion to Strike Declaration of Jason Kwon (Dkt. 20) is

      **GRANTED.**

Dated: **March 01, 2016**

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 25**